IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STEPHANIE WOODS AND SOUTHERN HOME SOLUTIONS, LLC, | § § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:15-cv-00536 |
| v. | § § | |
| U.S. BANK, N.A., AMERICAN HOME 4 RENT PROPERTIES EIGHT, LLC, AND BARRETT, DAFFIN, FRAPPIER, TURNER & ENGEL, LLP, | § § § § § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Now before the Court is Plaintiffs' Motion to Remand (Dkt. 26) filed on September 28, 2015, which is opposed by all Defendants (Dkt. 27, Dkt. 28, and Dkt. 31). Having reviewed the motion, the responses, the applicable authorities, and the record in this case, the Court finds that Plaintiffs' motion (Dkt. 26) should be **GRANTED**.

Plaintiffs Stephanie Woods ("Woods") and Southern Home Solutions, LLC ("Southern") filed their Original Petition in state court on July 6, 2015. Plaintiffs named the following as Defendants: U.S. Bank, N.A. ("USB"), Barrett, Daffin, Frappier, Turner & Engle, LLP ("BDFTE"), and American Homes 4 Rent Properties Eight, LLC ("American"). Dkt. 1-4 at ¶ 2. In addition to seeking quiet title and challenging Defendants' authority and standing to foreclose, Plaintiffs also bring claims for negligent misrepresentation, fraud, and violation of the Texas Deceptive Trade Practices Act. Plaintiffs seek declaratory judgment and monetary damages. *See* Dkt. 1-4 at ¶¶ 44-47

Defendant USB filed a notice of removal on August 7, 2015 on the basis of diversity jurisdiction (Dkt. 1). On September 9, 2015, Plaintiffs filed an "Emergency Motion for Extension of Time to File Motion to Remand" (Dkt. 22), and on September 11, 2015, this Court granted Plaintiffs an additional 15 days to file a motion to remand.[1] *See* Dkt. 23. Plaintiffs subsequently filed the motion to remand (Dkt. 26) on September 28, 2015.

## BACKGROUND

This suit involves Plaintiffs' efforts to prevent a foreclosure sale on the property located at 105 Cloudcroft Drive, Wylie, Texas 75098 (the "Property"). Woods purchased the Property on March 2, 2009 and executed a Note and Deed of Trust with Leader One Financial Corporation. Dkt. 1-4 at ¶ 9 ("Original Petition"). The Note was subsequently assigned to USB on January 29, 2010. *Id*. at 15. According to Plaintiffs, the Property first went into foreclosure on October 4, 2011 when "USB wrongfully sold the home at a foreclosure sale to itself…but the sale was rescinded." *Id*. at ¶ 18. Plaintiffs' Original Petition goes on to recite a series of events from October 2012 to May 2015, during which time Woods was trying to work with USB to cure her default on the loan. *Id*. at ¶¶ 19-27. Ultimately, USB issued a Notice of Sale through its appointed Trustee, BDFTE. *Id*. at 23. The sale was scheduled for May 5, 2015 at 10:00 a.m. *Id*. Plaintiffs allege that "title passed to Southern on May 1, 2015" when Woods agreed to sell the property to Southern. *Id*. at ¶ 25. Plaintiffs further allege that on May 4, 2015, one day before the scheduled foreclosure sale, "USB simultaneously approved the packet from Southern and "sent a Stop Auction Sale request to the Trustee." These efforts proved futile. The Property was sold at auction on May 5, 2015, and, according to Plaintiffs, American was the successful purchaser. *Id*. at ¶¶ 31-32.

---

[1] In granting the motion, however, the Court noted that "any opposing Defendants are not precluded from later challenging, through any applicable authorities, whether the 30-day period can be extended by Court order."

**STANDARD**

Defendant USB removed this case on the basis of diversity jurisdiction. Suits are removed on the basis of diversity jurisdiction when: (1) the suit involves a controversy between citizens of different states and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. USB contends that Defendant BDFTE is a Texas citizen and was thus improperly joined in the litigation. Suits are removed on the basis of diversity jurisdiction "only if none of the parties in interest is *properly* joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added).

"To establish that a non-diverse defendant has been improperly joined, the removing party must prove (1) actual fraud in the pleading of jurisdictional facts, or (2) the plaintiffs' inability to establish a cause of action against the non-diverse party in state court." *Rico v. Flores*, 481 F.3d 234, 238-39 (5th Cir. 2007); *Holder v. Abbott Labs., Inc.*, 444 F.3d 383, 387 (5th Cir. 2006). The second prong only is at issue here, and its test is "'whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.'" *Rico*, 481 F.3d at 239. This Court must decide whether "there is any reasonable basis for predicting that [Plaintiffs] might be able to establish [Defendants'] liability on the pleaded claims in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). In making that determination, the court may conduct a Rule 12(b)(6)-type analysis, looking initially at the

allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. *Id*. The court is also required to resolve any issues of material fact or ambiguity in the state law in the plaintiffs' favor. *Rico*, 481 F.3d at 239.

As explained by the Fifth Circuit:

> To determine such possibility of state-court recovery, a court may analyze the sufficiency of a plaintiff's pleadings alone; or, in its discretion, pierce the pleadings and conduct a summary inquiry. The focus is on plaintiff's pleadings at the time of removal; post-removal filings may be considered only to the extent they amplify or clarify facts alleged in the state-court complaint, with new claims or theories of recovery disregarded.

*Akerblom v. Ezra Holdings Ltd.*, 509 Fed. App'x 340, 344-45 (5th Cir. 2013) (internal citations and quotations omitted). The petition as filed in state court controls a court's inquiry. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995); *see also Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999) (stating that the court must determine if there could possibly be liability "on the pleaded claims in state court.").[2] The party claiming fraudulent joinder bears a "heavy burden" of persuasion. *See Smallwood*, 385 F.3d 568 at 574.

## ANALYSIS

### I. Timeliness of Motion to Remand

In opposing Plaintiffs' motion to remand, Defendants BDFTE and American argue that the motion should be denied because it was filed fifty-two days after the case was removed, and, therefore, was not timely filed. *See* Dkt. 27 at 3-4; Dkt. 28 at 2-3. Generally, a court may remand a case on the basis of any valid defect identified in a motion to remand as long as it is made within 30 days of removal, and a court is required to strictly construe the removal statute in

---

[2] The Court notes that since filing the motion to remand, Plaintiffs have filed a motion for leave to amend the complaint and has sought other relief from the Court. The Court cannot address that request to amend until it addresses whether the case was properly removed and it has removal jurisdiction, and the petition as filed in state court controls the Court's inquiry. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995); *see also Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir.1999) (stating that the court must determine if there could possibly be liability "on the pleaded claims in state court.").

favor of remand and against removal. 28 U.S.C. §1447; *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007). If, however, remand is based on jurisdictional grounds, the plaintiff can move to remand at any time. *See* 28 U.S.C. § 1447(c); *see also Gonzales v. Rio Grande Plumbing Supply, Inc.*, No. CIV.A. M-04-409, 2005 WL 1653030, at *1 (S.D. Tex. July 11, 2005) (finding that 28 U.S.C. § 1447(c) clearly allows a plaintiff to challenge subject matter jurisdiction well beyond thirty days after a filing of a notice of removal); *Carroll v. Gold Medal, Inc.*, 869 F.Supp. 745 (E.D.Mo.1994) (stating that diversity jurisdiction in removal cases goes to subject matter jurisdiction and was not capable of being waived by tardiness). Since diversity jurisdiction in removal cases goes to subject matter jurisdiction and is "not a mere procedural irregularity capable of being waived," the Court finds that Plaintiffs' motion to remand was timely filed. *Carroll*, 869 F. Supp. 745, 747. Accordingly, the motion must be decided based on whether there is any possibility of recovery by the Plaintiffs against BDFTE. *Rico*, 481 F.3d at 239.

## II. Improper Joinder

Diverse Defendant USB's notice of removal claims that although Defendant BDFTE is "believed to be a Texas citizen," it was improperly joined, and, therefore, its "citizenship should be disregarded for purposes of diversity." Dkt. 1 at ¶ 17. USB contends that Plaintiffs have not asserted any viable causes of action against BDFTE. The Court thus reviews the state court petition (Dkt. 1-4) for the claims made against BDFTE.

The only claims against BDFTE in the "Causes of Action" portion of Plaintiffs' petition are for violations of the Texas Deceptive Trade Practice Act (the "DTPA"). *Id*. at ¶ 41. Plaintiffs allege that USB and BDFTE violated the DTPA by "colluding to refuse to provide a payoff amount after accepting the Workout package and issuing the right to make a prepayment" in the amount of $200,000 "for the sole purpose of precluding Southern from meeting the price

5

by issuing a payoff quote in excess" of the previously agreed amount of $200,000. *Id*. at ¶ 41. The petition further alleges that BDFTE "wrongly sold [the Property] to American" when it did not have the authority to do so "based on the stop sale order given by USB on May 4, 2015." *Id*.

### A. Claims Against Substitute Trustees

USB contends that "the Texas Property Code expressly states that a substitute trustee is not a necessary party to a lawsuit…asserting claims only against the substitute trustee only in their capacity as a substitute trustee." Dkt. 1 at ¶ 20 (citing TEX. PROP. CODE § 51.007(a); *WAMCO XXVIII, Ltd. v. Casa Grande Cotton Fin. Co.*, 314 F. Supp. 2d 655, 657 (N.D. Tex. 2004)). The Court is not convinced. Rather than expressly barring claims against a substitute trustee, § 51.007(a) of the Texas Property Code provides that a trustee *may* plead in the answer that the trustee is not a necessary party. TEX. PROP. CODE § 51.007(a) (emphasis added). That same section requires the denial to be verified and to state the basis for the trustee's reasonable belief that he was named as a party solely in his capacity as a trustee. *Id*. Section 51.007 also provides that a verified response to the trustee's verified denial is due within 30 days. *See* § 51.007(b). Should a party fail to make the verified response or objection within the 30–day time frame, then the trustee shall be dismissed from the suit or proceeding without prejudice. *See* § 51.007(c).

In *WAMCO*, the substitute trustee was dismissed from the lawsuit without prejudice because the substitute trustee filed a verified denial, and the plaintiff failed to timely file a verified response. *WAMCO*, 314 F. Supp. 2d at 657. BDFTE's Original Answer (*see* Dkt. 1-8) did not plead – as required by § 51.007(a) – that it is not a necessary party by a verified denial or state a basis for its reasonable belief that it was named solely in its capacity as a trustee. *WAMCO* has little bearing on the Court's analysis here.

6

Although courts routinely hold in foreclosure cases that the mere inclusion of a non-diverse trustee as a nominal party will not defeat diversity jurisdiction, in circumstances where a plaintiff asserts misconduct on the part of the trustee, a court must assess whether such allegations give rise to a reasonable basis for plaintiff to recover against the trustee in state court. *Mendez v. Wells Fargo Bank, N.A.*, 2014 WL 1923056, at *2 (W.D. Tex. 2014, reconsideration denied); *see also Ochoa v. U.S. Bank & Nat'l Ass'n*, WL 2565366, at *2–3 (W.D.Tex.) ("Texas Property Code establishes that a trustee may be joined as a party to a suit, and this Court and other district courts in Texas have held that substitute trustees are proper parties.") (internal citations omitted); *McIntosh v. U.S. Bank Nat. Ass'n.*, 2012 WL 75141, at *2-3 (S.D.Tex. 2012) ("[S]ection 51.007 does not stand for the proposition that a substitute trustee cannot be sued ever in that capacity or that she must automatically be dismissed simply because she is sued in her capacity as substitute trustee." (internal citations omitted).

"Under Texas law, a substitute trustee may be held liable for failing to comply with the terms of the Deed of Trust or with the Property Code. *McIntosh v. U.S. Bank Nat. Ass'n*, 2012 WL 75141, at *2 (S.D. Tex. Jan. 10, 2012). A substitute trustee has the duty to "act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust." *Id.* (citing *Marsh v. Wells Fargo Bank, N.A.*, 760 F.Supp.2d 701, 708 (citations and internal quotation marks omitted). "This duty is breached when the trustee fails to comply strictly with the terms of the deed of trust or the notice and sale provisions of § 51 .002 of the Texas Property Code." *Id.* (citing *Clauer v. Heritage Lakes Homeowners Ass'n*, 726 F.Supp.2d 668, 673 (E.D.Tex.2010)).

Based on the foregoing, the Court is not convinced by USB's argument that § 51.007 of the Texas Property Code bars Plaintiffs' recovery from a substitute trustee (Dkt. 1 at ¶ 20).

Since Plaintiffs allege wrongful foreclosure resulting from misconduct on behalf of the trustee, the Court is required to assess the potential viability of those claims in state court.

### B. Failure to State a Claim under DTPA

Defendants USB and BDFTE argue that Plaintiffs' failed to allege sufficient facts to state a DTPA claim. *See* Dkt. 28 at 5; Dkt. 31 at 10-13. A DTPA claim requires the claimant to establish: (1) that he is "a consumer of the defendant's goods or services;" (2) that "the defendant committed a false, misleading, or deceptive act in connection with the lease or sale of goods or services, breached an express or implied warranty, or engaged in an unconscionable action or course of action;" and (3) that "such actions were the producing cause of the ... actual damages." *Perkins v. Bank of Am.*, 602 F. App'x 178, 182 (5th Cir. 2015) (citing *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex.App.2007, pet. denied). In order to qualify as a consumer under the DTPA a person "must seek or acquire goods or services by lease or purchase" and "the goods or services sought or acquired must form the basis of [that person's] compliant." *Id*.

USB contends that Plaintiffs are not consumers under the DTPA because they "are not able to show that they are consumers of Trustee's goods or services." Dkt. 41 at 12. Although Plaintiffs appear to concede that Woods is not a consumer, they contend that "Southern [is] a consumer who purchased for use, the Woods property" (Dkt. 37 at 8) and allege that BDFTE colluded with USB "to refuse to provide a payoff amount" and "wrongly sold the property" in spite of the stop sale order given by USB (Dkt. 1-4 at ¶ 41). Plaintiffs allege further that BDFTE "misrepresented to American that it had the authority of a salesman, representative or agent of U.S. Bank" and that BDFTE's "conduct in carrying out a sale was a false, misleading or deceptive act or practice in violation of Tex. Bus. & Com. Code § 17.46(b)(14)." Dkt. 26 at 6.

Generally, a person cannot qualify as a consumer under the DTPA if the claim is based on a pure loan transaction or on a loan modification application. *See Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980) (A person seeking a loan from a bank to refinance his car did not qualify as a consumer under the DTPA because "money is neither a good nor service."); *Walker v. F.D.I.C.*, 970 F.2d 114, 123 (5th Cir. 1992); *see also Kennedy v. Wells Fargo*, No. 11–CV–957–FB, slip op. at 12 (W.D.Tex. Oct. 23, 2012) ("To the extent plaintiff bases her DTPA claim, not on the lending of money, but on the review and subsequent denial of her loan modification application, the Court finds plaintiff does not constitute a consumer under that theory either."); *Owens v. BAC Home Loans Serv.*, L. P., No. H–11–2742, 2012 WL 1494231, at *4 (S.D.Tex. Apr.27, 2012) ("Because the plaintiffs sought to modify their mortgage loan and not to acquire, by purchase or lease, a 'good' or 'service,' they have not stated a viable DTPA claim."). However, goods or services sought by a borrower can form the basis for the DTPA complaint. *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984). (citing *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex.1983) (plaintiffs who sought financing for a house were consumers since they "did not seek to borrow money; they sought to acquire a house"); *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex.1982) (plaintiff was a consumer since he sought a loan in order to purchase a dump truck)); *see also Central Texas Hardware v. First City*, 810 S.W.2d 234, 237 (Tex.App.1991, writ denied) (plaintiff who intended to acquire seasonal inventory goods with the loan was not a consumer because he did not allege any complaint regarding the goods intended to be purchased with the loan).

Plaintiffs allege in their Original Petition that Southern sought to acquire the Property by purchase and that a cloud on Southern's title arose from the alleged misconduct and bad faith of

9

BDFTE. *See* Dkt. 1-4 ¶ 41. USB responds that Plaintiffs are not consumers because they did not acquire goods or services from BDFTE. The Supreme Court of Texas has defined "services" as: "action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object." *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 at 174 (citing *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex.1962). More simply, the definition of services "includes an activity on behalf of one party by another." *Id*. In the instant case, BDFTE was performing an activity on behalf of USB. The essence of Plaintiffs' claim is that in performing that activity, BDFTE wrongfully sold the Property without authority causing the harm of which Plaintiffs complain. Because here the conduct of BDFTE in performing "an activity on behalf of another," is the basis for Plaintiffs' complaint, the Court is not persuaded that Plaintiffs' DTPA claim fails simply because they did not seek or acquire goods or services directly from BDFTE. Moreover, a consumer suing under the DTPA need not establish contractual privity with the defendant; he need only show that the defendant has committed a deceptive act which is the cause of the consumer's damages. *Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex. 1987) (citing *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985)).

The parties have not cited, nor has the Court located, any authoritative precedent specifically addressing facts similar to those alleged herein. Plaintiffs provide factual statements to support their conclusion that BDFTE did not act in good faith and that they qualify as consumers under the DTPA. Defendant has cited no authority that would show such allegations are insufficient under the DTPA. Although the question is a close one, this Court need not be the final arbiter of the issue. In light of Defendants' heavy burden of proving that non-diverse Defendants have been fraudulently joined to defeat diversity, the Court cannot say that Southern

is not a consumer for purposes of the DTPA, or that Plaintiffs have no possibility of recovery under state law against BDFTE.

USB also contends that Southern lacks standing under DTPA because "its alleged injuries [] derive from its own dealings with Woods relating to the Property." Dkt. 31 at 11-12. However, Plaintiffs allege that title had already passed to Southern prior to the sale of the Property by BDFTE. *See* Dkt. 1-4 at ¶ 26; Dkt. 37 at 3. Only the mortgagor or parties in privity with the mortgagor may contest the validity of a sale under the mortgagor's deed of trust. *See Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex.Comm'n App.1932, opinion adopted). Southern's claims arguably arise in privity based on Plaintiffs' allegation that Woods conveyed the Property to Southern on April 30, 2015. Dkt. 1-4 at ¶ 38(a). Given that this Court is required to resolve issues of material fact and ambiguities in the state law in Plaintiffs' favor, the Court cannot conclude that there is no basis for recovery against BDFTE under the DTPA. *Rico*, 481 F.3d at 239. It is a matter best reserved for the state court to resolve.

### C. Immunity and "Qualified Immunity"

USB contends that BDFTE is entitled to immunity because it is a substitute trustee. Dkt. 31 at 6-7. BDFTE similarly argues that Plaintiffs' claims against it are barred by "qualified immunity" (Dkt. 28 at 4-5) because BDFTE's "only involvement with the Property was as a law firm representing its client, [USB]" in connection with a foreclosure proceeding. *Id*. The Court finds both arguments unavailing.

As explained, a trustee has a separate capacity and is imposed with a particular legal responsibility. *Perry v. Long*, 222 S.W.2d 460, 467 (Tex.Civ.App. 1949, writ ref'd) ("trustees are not agents"); *see also McIntosh v. U.S. Bank*, 2012 WL 75141, at *4 ("A trustee exercising the authority to foreclose in accordance with the terms of a deed of trust does not act merely as

an agent or employee of the lienholder but has a separate capacity with a particular legal responsibility."); *Hammonds v. Holmes*, 559 S.W.2d 345, 347 ("The trustee has a separate capacity and is imposed with a particular legal responsibility."); *Beggs v. Brooker*, 79 S.W.2d 642, 643 (Tex.Civ.App. 1934), aff'd,130 Tex. 46, 106 S.W.2d 1039 (Tex.1937) (same). As also explained, there is no basis to conclude that a substitute trustee cannot be sued ever in her capacity as a substitute trustee or that she must automatically be dismissed simply because she is sued in her capacity as substitute trustee. *McIntosh*, 2012 WL 75141, at *2-3. Because it is alleged that BDFTE was the substitute trustee for USB, and not acting merely as an agent, the Court cannot find that any doctrine of immunity bars recovery against it.

### D. Statute of Frauds

Finally, USB argues that Plaintiffs' claims are barred by the statute of frauds. Because that argument goes only to the validity of the stop sale order allegedly issued by USB, it does not relate to the claims against the in-state defendant BDFTE, which is the issue before the Court for the purpose of the improper joinder inquiry. The focus of this Court's inquiry must be the joinder, not the overall merits of the Plaintiffs' case. *Smallwood*, 385 F.3d at 573. Therefore, the Court need not address the merits of USB's statute of frauds argument for purposes of this improper joinder analysis.

## RECOMMENDATION

Taking Plaintiffs' allegations as true and viewing the facts in a light most favorable to Plaintiffs, and considering the authorities and arguments cited by the parties, the Court finds that Plaintiffs have sufficiently pleaded facts to establish a DTPA claim against BDFTE. "[W]hether the plaintiff has stated a valid cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery." *Griggs*, 181 F.3d at 701. Based

on Plaintiff's allegations that Southern is a consumer and that BDFTE acted in bad faith and "wrongly sold [the Property] to American" (Dkt. 1-4 at 9), the Court cannot find that there is no possibility of recovery against it. Therefore, this Court does not have jurisdiction over the case. *See Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir. 1988). The Court recommends that Plaintiffs' Motion to Remand (Dkt. 26) be **GRANTED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.; Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 22nd day of January, 2016.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE